IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 21-0106-WS-N |
| | ) |
| $60,028.00, MORE OR LESS, IN U.S. CURRENCY, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

When the government files a civil forfeiture action, potential claimants are subject to a clearly established, two-step procedure for asserting a claim to the defendant property. First, the claimant must file a "claim," generally within 35 days after the government sends notice to the potential claimant. Supplemental Rule G(4)(b)(ii)(B), G(5)(a)(ii)(A). Second, the claimant must then file an "answer," generally within 21 days after filing his claim. *Id*. Rule G(5)(b). The claimant here filed both a claim and an answer, but he did not do so in the right order or at the right times. These irregularities prompted the plaintiff to file a motion to strike the claimant's answer, amended answer and claim. (Doc. 19 at 1). The claimant responded with a motion to afford him leave to proceed with his claim. (Doc. 21).[1] The parties have submitted briefs and other materials in support of their respective positions, (Docs. 17, 19, 21, 23, 24), and the motions are ripe for resolution.

The plaintiff sent the claimant direct notice of the action pursuant to Supplemental Rule G(4)(b)(i). (Doc. 1-2). The notice was sent on March 9,[2] making the claimant's

---

[1] Because the claimant's motion repeats and therefore supersedes an earlier motion, his original motion for such relief, (Doc. 13), is **denied as moot**.

[2] All dates are 2021 unless otherwise noted.

claim due on April 13, as the notice advised. (*Id*. at 2). Rather than file a claim, the plaintiff on April 13 filed an answer. (Doc. 4). The answer, and an amended answer filed April 14, (Doc. 5), included counterclaims against various law enforcement officials and entities, and on April 19, the claimant moved to implead them. (Doc. 6). On May 3, the plaintiff filed a brief in opposition to this motion, (Doc. 8); the plaintiff did not, however, object that the claimant had failed to file a claim. The first time the plaintiff raised any issue regarding the filing of a claim was on May 19. (Doc. 19 at 4). In a letter to counsel, the plaintiff advised the claimant to "remedy this deficiency" by filing his claim no later than noon on May 26, failing which the plaintiff would "address this issue directly with the Court." (Doc. 17-2 at 3; Doc. 24 at 2).

At approximately 3:00 p.m. on May 26, claimant's counsel left a voicemail for plaintiff's counsel stating that, due to his daughter's high school graduation that date, he would be unable to file a claim by the plaintiff's unilaterally imposed deadline. (Doc. 24 at 2). At 3:36 a.m. on May 27, the claimant filed what he styled a "claim." (Doc. 14). Attached as an exhibit to the claim was the "CAFRA Seized Asset Claim Form" the claimant had submitted in the administrative proceedings in December 2020. (Doc. 14-1).

A claim under Supplemental Rule G(5) must accomplish the following: (1) "identify the specific property claimed"; (2) "identify the claimant"; (3) "state the claimant's interest in the property"; (4) "be signed by the claimant under penalty of perjury"; and (5) "be served on the government's attorney." Supplemental Rule G(5)(a)(i). The "claim," (Doc. 14), does not satisfy the fourth requirement, but the attached administrative claim form, (Doc. 14-1), checks all five boxes. As of May 27, therefore, the plaintiff had filed a claim within the contemplation of Supplemental Rule G(5)(a)(i), compliant with the rule in every respect except timeliness. On June 3, the claimant filed a "verified claim," which also satisfies all requirements of Supplemental Rule G(5)(a)(i). (Doc. 21-1).

The plaintiff denies that the claimant has ever filed a claim. It argues that the claimant has not "state[d] [his] interest in the property" as required by Supplemental Rule

2

G(5)(a)(i)(B).  (Doc. 19 at 5; Doc. 24 at 2).  On the contrary, the administrative claim identifies the claimant as the "sole and exclusive owner" of the defendant funds, (Doc. 14-1 at 2), as does the claim to which it is attached.  (Doc. 14 at 1).  The verified claim adds that the funds were "derived from [the claimant's] lawful business interests."  (Doc. 21-1 at 1).

The plaintiff posits that a claimant's statement of interest under the rule must include "reasonable facts establishing his interest" in the defendant property.  (Doc. 24 at 7).  In particular, the plaintiff insists that the rule requires that the claim:  (a) name the legitimate business from which the funds were derived; (b) identify the year the funds were earned; (c) state whether taxes were paid, or are owed, on the funds; (d) identify what lawful businesses paid the funds to the claimant or his business; (e) identify the specific lawful goods and/or services for which the funds were paid; (f) specify what amounts were paid for which goods and/or services; (g) identify the mode of payment (*e.g.*, cash); (h) identify the dates of payment; and (i) explain why payments were made in cash.  (*Id*. at 11).  The plaintiff identifies no legal authority reading such an onerous requirement into Supplemental Rule G(5)(a)(i)(B).  All it offers is *United States v. One 1990 Beechcraft, 1900 C Twin Engine Turbo-Prop Aircraft*, 619 F.3d 1275 (11th Cir. 2010), for the proposition that "standing and ownership are distinct concepts in civil forfeiture law."  (Doc. 24 at 8).

To the uncertain extent the plaintiff intends to suggest that the Eleventh Circuit thus requires more than a sworn assertion of ownership to establish statutory standing, it misreads the opinion.  The claimant in *One 1990 Beechcraft* held legal title to the aircraft. 619 F.3d at 1277.  The claimant invoked the statutory "innocent owner" defense of 18 U.S.C. § 983(d).  To be deemed an "owner" for purposes of this defense, the claimant must show both that it has "an ownership interest" in the property and that it is not "a nominee who exercises no dominion or control over the property."  *Id*. § 983(d)(6)(A), (B)(iii).  The trial court ruled that a claimant must satisfy the second element to show statutory standing, but the appellate court disagreed, stating it is not part of standing but of the innocent owner defense on its merits.  619 F.3d at 1277 n.3.  *One 1990 Beechcraft*

3

thus does not support the plaintiff's argument; if anything, it underscores that an assertion of ownership, such as legal title, is enough to satisfy Supplemental Rule G(5)(a)(i)(B). 619 F.3d at 1277 ("The district court recognized that [the claimant] had legal title to the plane and thus held an ownership interest in the property …..").

It is not the responsibility of the Court to discover authority supporting a party's *ipse dixit*, and the plaintiff's failure to offer such authority thus requires rejection of its position. The Court further notes the facial unlikelihood that a simple requirement to "state" one's "interest" in the defendant property could require not just a statement but an exhaustive narrative, or that it could require the claimant to address, not simply the claimant's property interest in the defendant, but the lawfulness of the claimant's acquisition of that interest. Multiple appellate courts have rejected the plaintiff's unsupported position. *See United States v. $579,475.00 in U.S. Currency*, 917 F.3d 1047, 1049 (8th Cir. 2019) (a claim's assertion that the claimant is "the owner" of the defendant property satisfies Supplemental Rule 5(G)(a)(i)(B), as "[t]o impose a mandate that the claimant must provide more detail or specificity, such as information about how it obtained the funds at issue, would go beyond the sparse terms of the rule."); *United States v. $31,000.00 in U.S. Currency*, 872 F.3d 342, 350-51 (6th Cir. 2017) ("At the pleading stage, a verified claim of ownership is sufficient to satisfy … the procedural requirements of Rule G," and "[n]owhere in the text of Rule G do we see any support" for requiring claimants "to provide additional detail"); *United States v. $196,969.00 in U.S. Currency*, 719 F.3d 644, 646 (7th Cir. 2013) (a claim asserting the claimant was the owner of the defendant properly "stated the claimant's interest in the property" under Rule G(5)(a)(i)(B), and the rule's "terse and crystalline language" cannot support a requirement that the claimant also state "how he obtained possession of the currency, including, but not limited to, the person(s) from whom he received the currency, the date of receipt, the place of the receipt, and a description of the transaction which generated the currency").

As noted, the first document filed by the claimant that satisfies Supplemental Rule G(5)(a)(i) is the administrative claim attached as an exhibit to the claimant's "claim."

4

(Doc. 14-1).  The plaintiff denies that such a document can ever constitute a claim for purposes of the rule.  Again, the plaintiff offers no authority for the proposition that an administrative claim cannot be re-used in judicial proceedings; instead, the plaintiff faults the claimant for failing to show that it can be so used.  (Doc. 24 at 4).  It is the plaintiff, however, that has moved to strike the claim, so it is first up to the plaintiff to make a showing that its position is correct.

The plaintiff's only effort to do so is to point to the following language in the direct notice it sent the claimant:  "Any claim you filed with the seizing agency in an administrative proceeding is **NOT** a substitute for the claim you must file in this action which meets the requirements of and within the time allowed under Rules G(4) and G(5), as described above."  (Doc. 1-2 at 2; Doc. 24 at 4-5).  This is undoubtedly a correct proposition, but all it says is that filing a claim in an administrative proceeding does not excuse a claimant from filing another claim in the judicial proceeding.  Nothing in the quoted language forbids a claimant to file in the civil action a previous administrative claim that includes all the information required by Supplemental Rule G(5)(a)(i), that is signed by the claimant under penalty of perjury, and that is served on the government's attorney.  The plaintiff has suggested, and the Court can imagine, no rational reason to preclude a claimant from doing so.  Even were the plaintiff correct, as noted above the claimant filed a "verified claim" on June 3, seven days after filing his administrative claim, mooting the plaintiff's objection to the claimant's reliance on his recycled administrative claim.

In summary, the claimant was required to file a claim satisfying Supplemental Rule G(5)(a)(i) by April 13.  The claimant filed such a claim on May 27, and he filed another such claim on June 3.  The only remaining question is whether the untimeliness of the claimant's filing should result in his claim and answer being stricken, effectively stripping him of any opportunity to contest forfeiture.

A district court "may exercise its discretion by extending the time for the filing of a verified claim."  *United States v. $125,938.62*, 370 F.3d 1325, 1329 (11th Cir. 2004).  Factors to consider include:  (a) when the claimant became aware of the seizure; (b)

whether the government encouraged the delay; (c) the claimant's offered reasons for the delay; (d) whether the claimant had advised the court and the government of his interest in the defendant property before the claim deadline; (e) whether the government would be prejudiced by the late filing; (f) the sufficiency of the answer in meeting the basic requirements of a verified claim; (g) whether the claimant timely petitioned for an enlargement of time; (h) the dollar value of the seized property; and (i) whether the fault lies with the claimant or with his lawyer. *Id.* The plaintiff acknowledges these as relevant factors. (Doc. 24 at 10).

Several of these factors clearly weigh against the claimant: (1) the claimant has been aware of the seizure of the defendant property from his person since the seizure occurred in October 2020, (Doc. 1); (2) prior to May 19, there is no indication or allegation that the plaintiff encouraged the claimant to delay in filing a claim (although the plaintiff's instruction on May 19 to file a claim by May 26 in order to avoid the plaintiff involving the Court could be construed as encouragement, if not approval, of that final week's delay); (3) despite the plaintiff's challenge to do so, the claimant has offered no reason for his delay in filing a claim (other than that counsel's daughter's graduation delayed the filing by a single day, from May 26 to May 27); and (4) the claimant did not at any point seek an extension of time to file his claim.

Other factors favor the claimant. First, the claimant had advised the Court and the plaintiff of his interest in the defendant property by the April 13 claim deadline, both because the claimant's answer filed that date claims the defendant as his property, (Doc. 4 at 4-6), and because the complaint sets forth at length the claimant's explanation of the source of the funds. (Doc. 1 at 6-7).[3] Second, the value of the defendant property exceeds $60,000.[4] Third, "the district court should be wary not to confer the sins of the

---

[3] *See $125,938.62*, 370 F.3d at 1330 (noting that the complaint revealed the plaintiff was on notice of information omitted from claim).

[4] A "substantial" amount in issue weighs in favor of the claimant. *$125,938.62*, 370 F.3d at 1330. One hundred thousand dollars is substantial in this context. *United States v. U.S. Currency, in the Amount of $103,387.27*, 863 F.2d 555, 563 (7th Cir. 1988) (source of the

attorney unto the claimant in a civil forfeiture case," *$125,938.62*, 370 F.3d at 1329, and the responsibility for the delay in filing a claim in this case patently lies with counsel, not his client.

Fourth, and most importantly, the claimant's April 13 answer identified the claimant, identified the defendant property, and declared the defendant to be the claimant's property, (Doc. 4 at 1, 4-6), and this pleading was timely served on the plaintiff, (*id*. at 8), leaving only the verification requirement unsatisfied by the claim deadline. "Forfeiture is a harsh penalty especially when the outcome is forced because of technical and procedural errors. We join our sister circuits in holding that amendments should be liberally permitted to add verifications to claims originally lacking them provided that the amendment would not undermine the goals underlying the time restriction and verification requirements of Rule C." *$125,938.62*, 370 F.3d at 1329 (internal quotes omitted).[5] "Where a claimant has made known to the court and the government his interest in the subject property before the deadline set for the filing of a proper claim has passed, the policy interest underlying the requirement of a timely verified claim would not be injured by allowing the claimant to perfect his claim by subsequent verification." *Id*. at 1329-30 (internal quotes omitted). That is precisely the situation here.

The plaintiff, while acknowledging that *$125,938.62* supplies the relevant factors, ignores most of them, addressing only those it believes aid its position. While the failure of the claimant (or, more precisely, his lawyer) either to seek an extension of time or to offer any explanation for his tardiness in filing a verified claim, falls far short of the commendable, those factors cannot be viewed in a vacuum. Given the plaintiff's actual awareness of the claimant's asserted ownership of the defendant property, and given the claimant's filing, by the claim deadline, of an answer compliant with Rule G(5)(a)(i) in

---

Eleventh Circuit's identification of "the amount seized" as a relevant factor). So is $29,159.86. *United States v. $343,726.60 in U.S. Currency*, 2005 WL 8165381 at *2 (S.D. Fla. 2005) (applying *$125,938.62*).

[5] Prior to the 2006 adoption of Supplemental Rule G, procedural requirements for contesting forfeiture were supplied largely by Supplemental Rule C.

all respects except verification, *$125,938.62* counsels granting an extension of time absent some substantial countervailing interest.

The only such interest the plaintiff identifies is that of avoiding prejudice to itself. The plaintiff insists that, in assessing whether to allow the late filing of a claim, "primary importance" should be placed on the prejudice *vel non* to the plaintiff of the delay. (Doc. 24 at 8). Assuming without deciding that this is a correct statement of law, it does not aid the plaintiff, who complains not of prejudice but of mere inconvenience, and that principally the result of its own decisions.

The plaintiff identifies its prejudice as follows: (1) it "is not sufficiently on notice regarding Claimant's sworn interest in the Defendant Funds"; (2) it "cannot effectively prepare for and engage in the Meeting of the Parties"; (3) it "cannot effectively prepare to engage in discovery"; and (4) it "has been required to file multiple additional motions and responses on the issue of timeliness." (Doc. 24 at 9). The Court examines these in turn.

As discussed above, the claimant was not legally obligated to provide any detail in his claim regarding his interest in the defendant beyond an assertion of ownership – an assertion he had made, and of which the plaintiff was aware, on and even before April 13. The plaintiff could not be prejudiced by not receiving information it was not entitled to receive. If the plaintiff wanted more detail about the claimant's "relationship to the defendant property," it was free to serve special interrogatories on the claimant as soon as the claim was filed on May 27, with responses due June 17. Supplemental Rule G(6)(a), (b). As far as the record discloses, the plaintiff has never done so. Any ignorance of the plaintiff regarding the claimant's asserted interest is thus due to the plaintiff's litigation choices, not the claimant's delayed filing of a claim.

On May 11, the Magistrate Judge set a deadline of June 25 for the parties to confer and file their report under Rule 26(f). (Doc. 11 at 1). The plaintiff received the verified claim on May 27, four weeks before that deadline. The plaintiff does not explain, and the Court cannot imagine, how the plaintiff could have been prejudiced by having almost an entire month to prepare for the meeting of parties. The parties met on June 25, and their report filed the same day includes no objection by the plaintiff that it was unable to

prepare for or participate in the meeting. (Doc. 25). Again, had the plaintiff desired additional information regarding the claimant's asserted interest in the defendant, it could have received such information prior to the June 25 meeting of parties by issuing interrogatories under Supplemental Rule G(6)(a), and its failure to do so cannot be laid at the feet of the claimant.

As in most civil cases, discovery was paused until the meeting of parties. (Doc. 11 at 2). As with the Rule 26(f) meeting of parties, the plaintiff cannot identify any respect in which the May 27 filing of a claim prevented the plaintiff from being prepared to commence discovery on June 25. The plaintiff's failure to take advantage of Supplemental Rule G(6)(a), and its failure to this date to propound any discovery at all, further underscore the absence of prejudice.

As noted, this matter is before the Court on the plaintiff's motion to strike the claimant's claim, answer and amended answer. According to the plaintiff, its filing of this motion, with supporting briefs and exhibits, of itself prejudices the plaintiff. Nothing, of course, compelled the plaintiff to file its motion or to oppose the claimant's corresponding motion for leave to proceed with his claim; the plaintiff could have accepted the late filing of the claim as just one of those imperfect things that happen in litigation and moved on. Indeed, had the claimant filed his claim at noon on May 26 rather than sixteen hours – and only five business hours – later, the plaintiff is on record that it would not have filed its motion and would not have raised any issue with the Court regarding an untimely claim. (Doc. 17-2 at 3; Doc. 24 at 2). Litigation necessarily involves litigating, and a party is not prejudiced in any meaningful sense by making an unforced decision to litigate an issue; if the law were otherwise, a party could manufacture prejudice to support a motion to strike simply by moving to strike. The plaintiff, whose burden it is to support its argument, offers no authority for any such proposition, which runs counter to several rulings by the Court in other contexts. *See Allstate Insurance Co. v. Regions Bank*, 2014 WL 4162264 at *6 (S.D. Ala. 2014) ("It is well-settled that allegations that an amendment will require the expenditure of some additional time, effort, or money do not constitute undue prejudice" sufficient to justify

denying a motion under Rule 15(a)(2)) (internal quotes omitted); *Jones v. Horizon Shipbuilding, Inc.*, 2012 WL 5187786 at *2 (S.D. Ala. 2012) ("[H]aving to absorb the ordinary costs of litigation is not undue prejudice" in the context of a motion to strike a tardily filed affidavit); *Kilbride v. Vrondran*, 2007 WL 2775185 at *4 (S.D. Ala. 2007) ("[Delay and legal costs are part and parcel of litigation and typically do not constitute prejudice for the purposes of Rule 55(c) ….") (internal quotes omitted).

Having carefully considered the factors identified by the Eleventh Circuit, the Court concludes that this is an appropriate case in which to exercise its discretion in favor of an extension of time.  The claimant is afforded until June 3, 2021 by which to file a claim compliant with Supplemental Rule G(5)(a)(i).  The verified claims filed by the claimant on May 27, (Doc. 14-1) and June 3, (Doc. 21-1), are therefore deemed to be timely.

For the reasons set forth above, the plaintiff's motion to strike is **denied**, and the claimant's motion for leave to proceed with his claim is **granted**.

DONE and ORDERED this 23rd day of July, 2021.

s/ WILLIAM H. STEELE  
UNITED STATES DISTRICT JUDGE
